UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                           Case No. 15-46403

ERIN PATRICIA CHEHADI,                           Chapter 7

        Debtor.                          Judge Thomas J. Tucker
_____/

**OPINION REGARDING DEBTOR'S TURNOVER MOTION, AND THE CHAPTER 7 TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS/TURNOVER MOTION, AND THE CHAPTER 7 TRUSTEE'S CORRECTED OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS/TURNOVER MOTION**

This case came before the Court for an evidentiary hearing on September 28, 2015, on certain unresolved issues involved in the following matters: (1) Debtor's motion entitled "Motion For Turnover of Seized Social Security Funds to the Debtor" (Docket # 19); (2) the Chapter 7 Trustee's Objection to Debtor's Claim of Exemptions and Motion for Turnover (Docket # 24); and (3) the "corrected" version of the Trustee's Objection, which was filed on June 23, 2015 (Docket # 28).

Based on the evidence presented, the Court makes the following findings of fact and conclusions of law.

1. The Court incorporates by reference its prior order, filed July 2, 2015, entitled "Order Regarding Further Proceedings on Debtor's Turnover Motion, and the Chapter 7 Trustee's Objection to Debtor's Claim of Exemptions/Turnover Motion, and the Chapter 7 Trustee's Corrected Objection to Debtor's Claim of Exemptions/Turnover Motion" (Docket # 40, the "July 2, 2015 Order").

2. The Court incorporates by reference the bench opinion it gave during the July 1, 2015 hearing. (A transcript of that bench opinion is filed at Docket # 46).

3. Of the $30,000.00 that was transferred to Debtor's TCF Bank account on April 13, 2015, the Court has previously ruled regarding $5,000.00 of the $30,000.00 amount, in the July 2, 2015 Order at ¶ 3 (Docket # 40).

4. None of the remaining $25,000.00 that was transferred to Debtor's TCF Bank account on April 13, 2015 (the "remaining $25,000.00") is deemed to be social security funds protected by 42 U.S.C. § 407, and to the extent such sum remained in Debtor's bank account or otherwise had not yet been spent as of the date and time when Debtor filed her bankruptcy petition on April 23, 2015, it is property of the bankruptcy estate under 11 U.S.C. § 541, subject to any allowed claim of exemption. And the Debtor has an allowed exemption in such amount, up to the amount of $4,725.00, under 11 U.S.C. § 522(d)(5).[1]

5. The Debtor has failed to meet her burden of proving, by a preponderance of the evidence, any of the following: (a) that any of the remaining $25,000.00 should be considered to be social security funds; (b) that when Debtor transferred $25,000.00 of her social security funds from her bank account to the bank account titled jointly in the name of her husband and her daughter, on April 7, 2015, either a bailment or a resulting trust was intended by Debtor or created. The Debtor has failed to rebut the presumption under Michigan law that her transfer of the remaining $25,000.00 on April 7, 2015, to the bank account owned jointly by Debtor's husband and daughter, was a gift that transferred ownership of the funds jointly to the Debtor's husband and daughter. *See Innis v. Michigan Trust Co.*, 213 N.W. 85, 86 (Mich. 1927)(citing *Waterman v. Seeley*, 28 Mich. 77, 81 (1873)). Thus, when the Debtor transferred the remaining

---

[1] This amount is calculated as discussed during the July 1, 2015 hearing (Tr. (Docket # 46) at 27-28), and based on Debtor's Schedule C filed on April 23, 2015 (Docket # 1) and the Court's July 2, 2015 Order (Docket # 40) at ¶ 3.

$25,000.00 into her husband/daughter's bank account on April 7, 2015, those funds lost their character as social security funds.  As the Court held in its July 1, 2015 bench opinion,

> . . . one implication of these cases, <u>Shumate</u> and <u>S&S Diversified</u>, is that to the extent the Debtor transferred ownership of Social Security funds that were owned by the Debtor and were in her account, bank account, to the extent the Debtor transferred ownership of those funds to other persons, that is the daughter and husband jointly with respect to their bank account and to the husband with respect to the $5,000, and the Debtor did not retain any ownership of the funds, to that extent, and I agree with the Trustee, that the funds lose their characteristics -- characteristic as Social Security funds and lose the protection of Section 407 of the 42 U.S. Code, and to the extent they are -- that there are funds from those sources paid back to the Debtor later prepetition, those are funds which are viewed as ordinary funds and not Social Security funds.

(Tr. of July 1, 2015 hearing (Docket # 46) at 14-15).

    6.  The evidence of the Debtor's intent is not sufficient to prove any of the things referenced in ¶¶ 5(a) and 5(b) above.  The Debtor did not testify at the evidentiary hearing.  But at least some of the testimony of the Debtor that was admitted into evidence regarding the subjects referenced in ¶ 5 above, in the form of the Debtor's testimony at the May 20, 2015 First Meeting of Creditors (Trustee's Ex. 1 at 5, line 9) and the Debtor's affidavit (Trustee's Ex. 5 at ¶ 7)(reference to Debtor's daughter's understanding) is false, and in those same respects, is inconsistent with the testimony of the Debtor's husband, Samer Chehadi, given at the evidentiary hearing. Furthermore, the Debtor lacks credibility as a witness, given the proven falsity of some of her testimony, described above, and given her husband's testimony that (a) the Debtor was "out of it" and "zoned out" when testifying at her First Meeting of Creditors, due the medications she was taking; and (b) the Debtor lies when she is on her medication.

3

7. The Debtor's husband, Samer Chehadi, testified that it was his understanding and the Debtor's understanding that the $25,000.00 in funds, which the Debtor transferred to the joint bank account of her husband and her daughter on April 7, 2015, continued to be the Debtor's money after the transfer. And on redirect examination, Mr. Chehadi testified that on April 7, 2015, he and the Debtor discussed that the money to be transferred that day would be the Debtor's money. But the Court finds this testimony by Mr. Chehadi to be unpersuasive and not credible. Obviously, Mr. Chehadi has a strong personal and financial interest in the outcome of this matter. But in addition, the Court finds it more likely than not that the Debtor and her husband intended the April 7, 2015 transfer of funds to be an outright transfer of ownership away from the Debtor, because they thought that this would be necessary to protect the funds from garnishment by the Debtor's creditor, Provident Unum Life Insurance Company. *Cf. Taunt v. Hurtado* (*In re Hurtado*), 342 F.3d 528, 535 (6th Cir. 2003)(finding that the bankruptcy debtor placed his funds into a bank account owned only by his mother, in order to "insulate" the funds from the debtor's creditors; and noting the debtor's purpose that "[t]hrough this mechanism, the funds could no longer be considered assets of the debtors").

8. It is undisputed, and overwhelmingly established by the evidence, that the Debtor's purpose, in transferring the $25,000.00 to the joint bank account of her husband and daughter on April 7, 2015, was to try to shield the funds from garnishment by a creditor, Provident Unum Life Insurance Company. (Before making the April 7, 2015 transfer, the Debtor feared such a garnishment, even though, unbeknownst to the Debtor and her husband at the time, such funds could not actually have been garnished by any creditor if they had been simply left in Debtor's bank account, because of the protection afforded to social security benefits by 42 U.S.C. § 407.)

9. Because Debtor's transfer of the $25,000.00 in funds on April 7, 2015 was done with an actual intent by the Debtor to hinder, defraud, or delay a creditor, Debtor's claim that she retained a beneficial interest in such funds after the transfer, under a theory of resulting trust, is barred as a matter of law, under Michigan common law. *See Faris v. Faris*, 230 N.W. 945, 946 (Mich. 1930)(rejecting a similar resulting trust claim by a husband who had transferred to his wife his interest in real estate, which he had held in a tenancy by the entirety with his wife, because a creditor had sued the husband; the court held that because of the husband's "fraudulent purpose" in making the transfer, "he has no right to invoke relief against such act");[2] *see also Taunt v. Hurtado*, 342 F.3d at 535 (a debtor's placing of his funds into his mother's bank account, to insulate the funds from the debtor's creditors, was a fraudulent purpose such that even if the mother had been subject to "some formal contractual arrangement to obey the debtor's commands" regarding the money in the mother's account, such arrangement would have been "void because it lacked consideration" under Michigan law; *and noting that under Michigan law a contract entered for the purpose of carrying out a fraudulent conveyance is*

---

[2] In *Faris*, the Michigan Supreme Court labeled it a "fraudulent purpose," which precluded the plaintiff husband's resulting trust claim, for the husband to have reacted to being sued by one of his creditors by transferring real property, which he and his wife owned as tenants by the entirety, to the sole ownership of his wife. This is so even though when the husband made this transfer, in 1891, his entireties property interests were not reachable by *his* creditors under Michigan law. In other words, the transfer actually was not necessary to protect the property at issue from the husband's creditors. *See Vinton v. Beamer*, 22 N.W. 40 (Mich. 1885)(a judgment creditor of only one of two spouses, who owned property as tenants by the entirety, could not levy under execution on such property to satisfy the judgment). The same is true today. *See Liberty State Bank & Trust v. Grosslight (In re Grosslight)*, 757 F.2d 773, 776 (6th Cir. 1985)("Under Michigan law, ordinary creditors cannot reach interests in entireties property, and the entire interest will therefore be exempt if there are no joint creditors.").

Despite the fact that in *Faris* the husband's transfer was not necessary to protect his property from his creditor, and without discussing this, the Michigan Supreme Court barred the husband's resulting trust claim because of the husband's "fraudulent purpose" in making the transfer to his wife. *Faris* closely parallels this case.

*illegal and void*).

10.  Debtor's bailment theory, argued for the first time in a brief filed by Debtor the day before the evidentiary hearing (Docket # 72) fails because (a) Debtor failed to meet her burden of proving the intent and agreement of the parties necessary to establish a bailment; (b) and because of the holdings in the *Faris* and the *Hurtado* cases, described in ¶ 9 above.  *See generally In re George L. Nadell & Co.*, 292 N.W. 684, 686 (Mich. 1940)("In its broadest sense it (bailment) has been said to include any delivery of personal property in trust **for a lawful purpose** . . .  the term (bailment) may be said to import the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, or kept, until the bailor reclaims it." (citation omitted; emphasis added)).

11.  Based on the foregoing findings and conclusions, the Court will enter a separate order that is consistent with this opinion.

**Signed on October 2, 2015**                    /s/ Thomas J. Tucker
                                                 **Thomas J. Tucker**
                                                 **United States Bankruptcy Judge**

6

15-46403-tjt    Doc 74    Filed 10/02/15    Entered 10/02/15 16:40:34    Page 6 of 6